# Exhibit A



# IN THE 13TH JUDICIAL CIRCUIT COURT, BOONE COUNTY, MISSOURI

RECEIVED JUL 18 2017 BY

| | |
|---|---|
| Judge or Division:<br>JODIE C ASEL | Case Number: 17BA-CV02473 |
| Plaintiff/Petitioner:<br>SCOTT ALAN YOUNG<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>SCOTT ALAN YOUNG<br>600 NTH MULBERRY STREET<br>#39<br>FAYETTE, MO 65248 |
| Defendant/Respondent:<br>FLAGSTAR BANK F.S.B. | Court Address:<br>705 E Walnut<br>COLUMBIA, MO 65201 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons for Service by Registered or Certified Mail

**The State of Missouri to:** FLAGSTAR BANK F.S.B.
                       Alias:

5151 CORPORATE DRIVE
TROY, MI 48098-2639

**COURT SEAL OF**

**BOONE COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner, or Plaintiff/Petitioner, if pro se, at the above address all within 30 days after the return registered or certified mail receipt signed by you has been filed in this cause. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in the petition.

   JULY 11, 2017                     /s/Beth Moore
     Date Issued                                   Clerk

Further Information:

### Certificate of Mailing

I certify that on   JULY 11, 2017   (date), I mailed a copy of this summons and a copy of the petition to Defendant/Respondent FLAGSTAR BANK F.S.B. by registered or certified mail, requesting a return receipt by the addressee only, to the said Defendant/Respondent at the address furnished by Plaintiff/Petitioner.

   JULY 11, 2017                     /s/Beth Moore
     Date                                           Clerk

**PAID**

IN THE 13th JUDICIAL CIRCUIT COURT, Boone County, MISSOURI

| Judge or Division: | Case Number: |
|---|---|
| Petitioner(s): Scott A. Young II & Corey Bowne<br>600 W Mulberry #39<br>Fayette MO, 65248<br>660-815-2815 vs. | Attorney for Petitioner(s): |
| Respondent(s): Flagstar Bank, FSB<br>5151 Corporate Drive, Troy<br>MI, 48098. Oakland county<br>249-312-5400 | Attorney for Respondent(s): Millsap & Singer LLC<br>Benjamin C. Stroubly, 612 Spirit Drive, Suite 2300, St. Louis, MO 63005. 636-537-0110 |

FILED
BOONE COUNTY
JUL 10 2017
CHRISTY BLAKEMORE
CLERK CIRCUIT COURT, COLUMBIA, MO

(Date File Stamp)

## Notice of Civil Action to Recover Damages

**Notice of Action:**

This to notify the Circuit Clerk of _____ County that this action is being brought under section 407.025.1 RSMo, which indicates any person who purchases or leases goods or services primarily for personal, family or household purposes, and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action.

In addition, section 407.025.2 indicates persons entitled to bring an action under subsection 1 of section 407.025 RSMo may, if the unlawful method, act or practice has caused similar injury to numerous other persons, institute an action as representative or representatives of a class against one or more defendants as representatives of a class.

07/10/2017
Date

Petitioner/Attorney

**Notification of Petition Filed:**

This is to notify the Attorney General that a Petition has been filed in the above case in accordance with section 407.025 RSMo.

A copy of the Petition is enclosed.

_____   _____
Date                                                 Clerk

**Notification of Judgment Entered:**

This is to notify the Attorney General that a Judgment has been entered in the above case in accordance with section 407.025 RSMo.

A copy of the Judgment is enclosed.

_____   _____
Date                                                 Clerk

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| COREY BOWNE, an individual )<br>)<br>And, )<br>)<br>)<br>SCOTT YOUNG, an individual )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>FLAGSTAR BANK, INC., )<br>A domestic corporation; )<br>    *5151 Corporate Drive* )<br>    *Troy, MI 48098-2639* )<br>)<br>)<br>And ) | Complaint and Jury Demand |

FLAGSTAR BANK, F.S.B.,
A domestic corporation;
    *5151 Corporate Drive*
    *Troy, MI 48098-2639*

    Defendants.

## **COMPLAINT FOR DAMAGES**

COME NOW the plaintiffs, and allege as follows:

### I. **PARTIES**

1. The plaintiffs reside in Boone County, Missouri, which is located within the jurisdiction of this Court.

1

2. The Defendant Flagstar Bank, Inc. is a publicly traded, Michigan based corporation that, at all times relevant, operated lending services (d/b/a "Flagstar") in the state of Missouri and specifically Boone County. The defendant does business within the jurisdiction of this Court.

3. The Defendant Flagstar Bank, F.S.B. is a subsidiary of and is owned and operated by Defendant Flagstar Bank, and, at all times relevant, operated mortgage and lending services (d/b/a "Flagstar FSB" in the state of Missouri and specifically Boone County. The defendant does business within the jurisdiction of this Court.

## II. JURISDICTION AND VENUE

5. Jurisdiction and venue are proper in this Court because the plaintiffs and defendant Flagstar reside and/or do business in this jurisdiction, the defendants do business in this jurisdiction, and the events that give rise to this cause of action occurred in this jurisdiction.

## III. GENERAL ALLEGATIONS

6. On or about [September 28 2009], Plaintiffs Bowne and Young (the "Plaintiffs") purchased a home 1013 Crump Lane, Columbia, MO 65202 (the "Property"). The purchase price of the home and amount of the subsequent mortgage held by Defendants was [$110,000]

7. On or about June 26, 2009, Defendants refinanced the property through Allied mortgage with Flagstar Bank, F.S.B., a wholly owned subsidiary of Flagstar Bank, Inc. (collectively, the "Defendants"). The Property was refinanced for the amount of $115,913.00

8. On or about April 24, 2011, the Property caught fire due to an electrical malfunction and was thereafter declared a total loss by the Plaintiff's insurer, Farmers' Mutual of Calloway County Insurance Company, 201 St. Louis Avenue, Fulton, MO 65251 (the "Insurer").

2

9. In case CFPB V. FLAGSTAR-case no. 2014-cfpb-0014. Plaintiffs were recognized as victims of flagstars illegal practices giving knowledge to the victims of Flagstar illegal acts that the amount compensated did not reflect that actual amount of damage to each consumer. CFPB informed victims that at their own discretion could seek their, if any, further compensation to the extent of actual damages. The settlement between the CFPB and FLAGSTAR would in NO EXCEPTION keep victims from further compensation. In 2012, same year for the cause of this petition being filed, Flagstar was involved in a lawsuit filed by the U.S. Department of Justice case 1:12-cv-01392 USA V. Flagstar Bank, FSB. In this case Flagstar admits to illegal practices in order to collect refunds from the FHA/HUD programs. It's important because if Flagstar is willing to admittedly commit acts in order to claim proceeds from the FHA program which is such a large and important branch of HUD, then what lengths would Flagstar go to defraud a homeowner with no resources such as the Plaintiffs Bowne & Young, actually able to hold the defendants Flagstar, FSB, accountable which is why the defendants intentionally attempted to force the plaintiffs loan into default. Once the defendant succeeded to force the loan into default, Flagstar accelerated the foreclosure sale to July 16th, 2012 and within 14 business days, August 3rd 2012, the defendant collected a check for $312,517.30 from an insurance refund later described along with the other known refunds and proceeds that Flagstar was able to co collect by forcing the plaintiffs loan into default.

10. Following the fire at the Property, the Property was assessed by the Insurer as a total loss. Insurance disbursements were considered as appropriate and were remitted to both the Plaintiffs and Defendant in the form of two checks, one for $69,360.00 on August 3rd 2011, that was endorsed by plaintiffs then sent to Flagstars claims department. the second check in the amount of

3

$33,865.00 on September 10th 2012 totaling $103,225.00 for insurance proceeds paid by Farmers mutual over time.

11. Following the fire, Defendants raised Plaintiffs' monthly mortgage payments from $790.00 per month to $1,063.00 per month without justification and based on errors as well as misapplied funds on Flagstars intentional doing.

12. Prior to the insurance settlement, Plaintiffs invested personal assets in the amount of $10,000. protecting the Property from further damages as directed to do so by Flagstar. This amount was never credited to the Plaintiffs principal or to their monthly mortgage payments. Nor was the $10,000 reimbursed as said would be by Flagstar claims specialist Susan Takouni.

13. Subsequent to investing personal assets into the Property to repair damage, Plaintiffs requested that those expenditures be applied to Plaintiffs delinquent charges and fees to the extent they actually existed, with the remainder to be applied to Plaintiffs' monthly mortgage payments. Defendants informed Plaintiff that the proceeds were to be used ONLY for the repair of the home and afterwards then their would be reimbursement made in the manner of plaintiffs choosing. Plaintiffs after several requests mailed to Flagstar as well as calling only to receive partial transcripts of loan history has later found that Flagstar never intended to repair the home or let the Plaintiff's keep their home which shows by actions of Flagstar.

The act of denying Plaintiffs the use of proceeds to be applied to the delinquent accounts, as the mortgage allowed but not to exceed the actual delinquent amounts, then using excessiveness of funds and withholding the information of the usage on purpose to keep from actually crediting the loan as seen on the transaction dated september 30th 2011 in the amount of $8040.58. after the discovery, March 2017, of this transaction being made by flagstar it's now apparent excessive amount transferred allowed Flagstar to receive double

4

payments for the months of january 2011-november 2011 as well as forcing the plaintiffs into default and excessive unjust late charges. This transaction also damaged the Plaintiff's credit due to reporting in accurately. The transaction on September 30th, 2011 will show how the defendant used an intentional process to commit tortious fraud with no regards to the harm or damage it would have on the plaintiffs.

14. On or about december 2011, Plaintiffs hired a contractor to make repairs to the Property. After making few partial repairs, the contractor stopped work as a result of Defendants' failure to pay for services rendered. Eventually, Defendants did remit payment to the contractor for work completed and not the previous repairs made by the Plaintiffs as directed to be made by the Defendants. The payment was only made to the contractor because of the email sent from Pam Crawford of Farmers Mutual insurance to Flag Stars' Susan Takouni stating that the final payment of $33,865.00 would NOT be made if funds from the first check was not used for repairs on the home. Only then after a year of waiting and complying to the demands in order to have proceeds disbursed for repairs, were made. Susan Takouni then told Tim Abney, the contractor to do no further work that there would be no further disbursements made but neglected to tell the plaintiffs. Due to this the contractor left the Property in a state of disrepair prior to foreclosure. Plaintiffs' was not made aware of the reason till after the foreclosure.

15. Over the course of 2012, Defendants contacted Plaintiffs on multiple occasions regarding the alleged failure to make monthly payments. During this time period, Plaintiffs were making payments while Defendants intentionally misapplied those payments to various fees and/or other charges thus allowing Defendants to eventually foreclose after forcing the Plaintiffs loan into default. in february 2012 Defendants made a demand of payment for $4299.00 to be paid by March 1st 2012 or the Plaintiffs would lose their home to foreclosure. On February 28th 2012,

5

Plaintiffs made a payment as demanded to the foreclosure department. while making said demand payment, Plaintiffs was advised that their loan was cured of any default and paid through the month of March 2012. As seen on Plaintiff's' credit report. once the last check was made from Farmers mutual on April 17th 2012, Flagstar sent an unjust demand for payment again in the amount of $2,169.23 stating the Plaintiffs owed the months of March and April 2012. Discoveries in march 2017 of the 09/30/2011 transaction being made by Flagstar shows that the loan was in fact paid through both months of March and April 2012 that was demanded. Flagstar knew that in fact while making the demand of this obviously by not following the demand date of 30 days and waiting to follow through with the foreclosure till the plaintiffs was in standards of an actual but forced default. Flagstar used deceitful acts to force the Plaintiffs to be unable to maintain the Mortgage payment. Then the Defendants Accelerated the foreclosure to keep the Plaintiffs from curing the loan or being able to pursue further options and finding the fraudulent actions that had been made by flagstar and stopping the foreclosure sale.

16. Payments made by Defendants over the life of the loan totaled an estimated $35,801.00, spanning the time from the issuance of the original promissory note on September 28th, 2008, until foreclosure of the Property on July 16, 2012 with a date of completion of foreclosure on August 26, 2015.

17. On or about August 3, 2012, Defendants received an insurance refund (CK#342161) in the amount of $312,517.30.

18. On or about September 10, 2012, Defendants received an insurance refund (CK#599931) in the amount of $33,865.00.

6

19. On or about September 24, 2014, Defendants received an insurance refund (CK#376857) in the amount of $16,883.17.

20. On or about August 3, 2011, Defendants received an insurance refund (CK# 58578) from the Insurer in the amount of $69,360.00.

21. On June 8, 2012, Plaintiffs received a Notice of Acceleration in connection with an alleged default under the promissory note.

22. On [july 16 2012], Defendants notified Plaintiffs the Property was being foreclosed on for failure to make their mortgage payments.

23. On [july 23,2012], Defendants initiated unlawful detainer proceedings against Plaintiffs with a date set for August 15,2012. the defendant then rescheduled the hearing to September 10th 2012. Prior to the hearing for unlawful detainer, Defendants and their agents entered the premises and seized Plaintiff's personal possessions as well as caused damage to the Plaintiffs personal Possessions.

24. Defendants' agents informed Plaintiffs had been locked out of the Property pursuant to a work order from Defendants.

25. Subsequent to the foreclosure, Plaintiffs attempted to obtain relevant documents from Defendants. On multiple occasions, Defendants refused to release the requested documents or only released partial documents.

26. On multiple documents the Defendant had forged documents to keep from allowing truth of defendant's actions. After several attempts prior and after three certified written attempts made as of March 2017 still the Defendants neglect their duty of making true and accurate loan history available to the Plaintiffs.

27. Following the foreclosure, the dwelling on the Property was demolished on or about [may 2014]. Defendants subsequently received payment for selling the land lot on August 25, 2015 in the amount of $12,900.00. Totaling the known proceeds for refunds, insurance claims and payments made by plaintiffs, allows defendants to have collected the amount of $481,326.47. after subtracting the cost of excessive charges for property preservation, the demolition of the home as well as fee's assessed for foreclosure estimated to be $41,000 in total; along with subtracting the refinanced loan in the amount of $115,913.00 allowed Flagstar to profit $324,413.47.

## IV. CAUSES OF ACTION AGAINST DEFENDANT FLAGSTAR BANK

### Negligence—Count I

22. Plaintiffs hereby incorporate by reference all preceding paragraphs 1-27of this Petition in *haec verba*.

23. At all times relevant herein, the Foreclosing Defendants, acting as Plaintiffs' lender and loan servicer, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, accurate crediting of payments made by Plaintiffs.

24. In taking the actions alleged above, and in failing to take the actions as alleged above, the Foreclosing Defendants breached their duty of care and skill to Plaintiffs in the servicing of Plaintiffs' loan by, among other things, failing to properly and accurately credit payments made by Plaintiffs toward the loan, preparing and filing false documents, and foreclosing on the Subject Property without having the legal authority and/or proper documentation to do so.

25. As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiffs suffered general and special damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment on Count I of their Petition against Defendant Flagstar in an amount that is fair and reasonable, for costs, and for any other relief the Court deems proper.

### Fraud—Count II

29. Plaintiffs hereby incorporate by reference all preceding paragraphs 1-27 of this Petition in *haec verba*.

30. Defendants engaged in a pattern and practice of defrauding Plaintiffs in that, during the life of the mortgage loan, Defendants failed to properly credit payments made and foreclosed on the Property based on Plaintiffs' alleged non-payment which they knew to be false.

31. Defendants had actual knowledge that the Plaintiff's account was not accurate but that Defendants could use the inaccuracy to foreclose on the Property in order to illicitly take possession of said Property and benefit from insurance proceeds from the destruction of the premises. Plaintiffs made such payments but Defendant intentionally misapplied said payments specifically to facilitate the foreclosure. The Defendants also utilized amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

32. Additionally, the Foreclosing Defendants concealed material facts known to them but not to Plaintiffs regarding payments, notices, assignments, transfers, late fees and charges with the intent to defraud Plaintiffs.

9

WHEREFORE, Plaintiffs pray for judgment on Count II of their Petition against Defendant Flagstar in an amount that is fair and reasonable, for costs, and for any other relief the Court deems proper.

### Conversion—Count III

34. Plaintiffs hereby incorporate by reference all preceding paragraphs 1-33 of this Petition in *haec verba*.

35. On July 23rd 2012, Defendant initiated unlawful detainer proceedings against Plaintiff. Prior to the hearing set for September 10th 2012, on said matter, Defendants agents entered the Property and seized Plaintiff's possessions and denied their return.

36. Upon requesting the return of their possessions, Defendants' agents threatened to pepper spray the Plaintiffs if they did not vacate the premises where Plaintiff had resided. Plaintiffs were unable thereafter to reacquire possession of their personal property that they owned and had a right to possess.

37. Defendants intentionally interfered with Plaintiff's' personal property and then deprived the Plaintiffs of possession or use of said personal property.

38. As a proximate result of Defendant's conversion of Plaintiffs' possessions, Plaintiffs suffered damages which are the natural, reasonable and proximate result of the conversion, the amount in excess of $14,217.17 as well damage to personal property to be determined at trial.

39. WHEREFORE, Plaintiffs pray for judgment on Count III of their Petition against Defendant Flagstar in an amount that is fair and reasonable, for costs, and for any other relief the Court deems proper.

### Breach of Contract—Count IV

41. Plaintiffs incorporate by reference all preceding paragraphs 1-41 of this Petition in *haec verba*.

42. Plaintiffs' original loan agreement then subsequent refinancing agreement set forth dates by which monthly principal and interest payments were due, and when late fees and other charges could be assessed. Furthermore, the terms of the note required payments made by Plaintiffs to be applied properly to the note.

43. Following the fire and destruction of the Property, Defendants improperly raised Plaintiffs' monthly mortgage payment from $790.00/per month to $1063.00/per month unjustly and or by the unfair acts of the defendants, thereby causing a breach of the loan agreement which ultimately led to Defendants forcing the plaintiffs loan into default and foreclosing on the Property

44. Defendants breached the note, loan agreement and subsequent refinancing agreement by failing to properly apply the payments made by Plaintiffs in 2011 and 2012, the result of which led to Defendants eventually foreclosing on the Property.

45. As a proximate cause of Defendants' breaches, Plaintiffs have suffered harm and are entitled to compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment on Count IV of their Petition against the defendants Flagstar Bank in an amount that is fair and reasonable, for costs, and for any other relief the Court deems proper.

### Breach of Implied Covenant of Good Faith and Fair Dealing—Count V

48. Plaintiffs hereby incorporate by reference all preceding paragraphs 1-48 of this Petition in *haec verba*.

11

49. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of the agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when the entered into the agreement.

50. In relation to the General Allegations and Counts as alleged above, Defendants did not act in good faith and did not deal fairly with Plaintiffs in connection with the willful misapplication of monthly mortgage payments or when their actions resulted in the conversion of Plaintiff's' personal property and damaged personal property, thereafter foreclosed on the Property even though Plaintiffs made said payments and Defendants were further reimbursed through insurance disbursements.

51. The Defendants enjoyed substantial discretionary power affecting the rights of Plaintiff during the events alleged in this Complaint. They were required to exercise such power in good faith.

52. Defendants engaged in such conduct to drive Plaintiffs into foreclosure so that they could acquire the Property for its value as well as retain any proceeds from insurance proceeds and refund reimbursements. These actions constitute a bad faith breach of contract between Plaintiffs and Defendants which show they had no intention of performing the contract, consisting of the original note and refinancing agreement, in good faith.

WHEREFORE, Plaintiffs pray for judgment on Count V of their Petition against the Defendant Flagstar in an amount that is fair and reasonable, for additional award of punitive damages and attorney's fees, for costs, and for any other relief the Court deems proper.

### Unjust Enrichment—Count VI

53. Plaintiffs hereby incorporate by reference all preceding paragraphs 1-___ of this Petition in *haec verba*.

54. As a result of the conduct described above, Defendants have been unjustly enriched at the expense of the Plaintiffs.

55. Defendants should be required to disgorge all monies, profits and gains which they have obtained or will unjustly obtain in the future at the expense of Plaintiffs, and such unjust enrichment should be remitted for the benefit of the Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment on Count VI of their Petition against the Defendant Flagstar in an amount that is fair and reasonable, for additional award of punitive damages and attorney's fees, for costs, and for any other relief the Court deems proper.

### JURY DEMAND

The plaintiffs hereby demand a jury trial.

By _/s/ Corey Bowne_
Corey Bowne

13

[600 north mulberry st 39 fayette mo, 65248]
Tel. [573-919-0888]

-and-

Scott Young  *[signature: Scott A. Young]*
600 north mulberry 39 fayette, mo 65248
Tel. 660-815-2815

plaintiffs acting PRO SE and/or with limited scope

In Regards to
Flagstar loan # 0502494089

14